UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James Nathan Kellum,

        Petitioner,

v.

Warden Steve Kallis,

        Respondent.

Case No. 21-cv-1664 (KMM/LIB)

**REPORT AND RECOMMENDATION**

This matter comes before the undersigned United States Magistrate Judge pursuant to a general referral for report and recommendation in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1, as well as, upon Petitioner James Nathan Kellum's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. [Docket No. 1].

For the reasons set forth herein, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**, and this action be **DISMISSED** without prejudice.

## I. Background

In late 1999, Petitioner was convicted in the United States District Court for the Northern District of Oklahoma of Interference with Interstate Commerce, Aiding and Abetting Carjacking, and Aiding and Abetting Use of Firearms During a Crime of Violence. (Public Information Inmate Data [Docket No. 8-2] at 2–4). On January 14, 2000, Petitioner was sentence to 332-month term of imprisonment to be followed by a five-year term of supervised release. (Id.).

Petitioner is currenting incarcerated at the Federal Medical Center in Rochester, Minnesota. (Petition [Docket No. 1] at 1). He has a projected release date of June 12, 2025, via his current good conduct time calculation. (Public Information Inmate Data [Docket No. 8-2] at 4).

On October 25, 2010, a corrections officer discovered a cellular telephone in Petitioner's prison cell in violation of the facility policy. (Discipline Hearing Officer Report [Docket No. 1-2] at 6). The cellular telephone was secreted inside a wooden shelf. (Id.). Upon discovery of the cellular telephone, the corrections officer wrote an incident report (hereinafter "Incident Report 2082406" or "Incident Report") describing his discovery of the cellular telephone and noting that it was a violation under "Code 108," "Possession, Manufacture, or Introduction of a Hazardous Tool." (Id.). Petitioner was provided a copy of the Incident Report. (Id.). Petitioner was advised of his right to remain silent, and he verbally acknowledged that he understood his rights. (Exhibit D [Docket No. 8-4] at 3). Petitioner stated, "Yes, I have no statement." (Id.).

On October 27, 2010, the Unit Discipline Committee held an initial hearing on Incident Report 2082406. (Discipline Hearing Officer Report [Docket No. 1-2] at 6). At this October 27, 2010, hearing, Petitioner stated that "[t]he shelves were in" his cell "when [he] moved in," and he argued that because he had only been at that particular facility for two months he would not have had time to secure a cellular telephone. (Exhibit D [Docket No. 8-4] at 2). Citing the severity of the charge, the Unit Discipline Committee referred the Incident Report to the Discipline Hearing Officer. (Id.).

On November 5, 2010, the Discipline Hearing Officer held a hearing on Incident Report 2082406. (Discipline Hearing Officer Report [Docket No. 1-2] at 6). Petitioner was again informed of his rights, and he verbally acknowledged that he understood his rights. (Id.). After Petitioner was read a copy of Incident Report 2082406, he declined to make a statement. (Id.). The Discipline Hearing Officer asked Petitioner who gave him the cellular telephone to which Petitioner responded, "I can't disclose that[;] I just got transferred from [Texas]. I had no contact

with family [because] they already took my telephone and TRULINCS privileges. I was only using the cell phone to contact my family." (Id.).

On November 22, 2010, the Discipline Hearing Officer issued a written report in which he found that Petitioner had possessed a cellular telephone in violation of "Code 108-Possession of a hazardous tool." (Id. at 7). Petitioner was sanctioned with thirty days of disciplinary segregation, the disallowance of good conduct time for forty days, and the forfeiture of 540 days of non-vested good conduct time. (Id.). Petitioner was also prohibited from utilizing the phone or TRULINCS system for a period of eighteen months. (Id.). A copy of the Discipline Hearing Officer Report, containing the Discipline Hearing Officer's finding, was provided to Petitioner on November 23, 2010. (Id. at 8). The Discipline Hearing Officer Report advised Petitioner that he had a right to appeal the Discipline Hearing Officer Report for a period of twenty calendar days. (Id.).

On December 3, 2010, Petitioner filed an appeal with the Regional Officer challenging the Discipline Hearing Officer's conclusions and sanctions regarding Incident Report 2082406. (Exhibit A [Docket No. 7-1] at 2). The Regional Office denied Petitioner's administrative appeal. (Id.).

On April 5, 2011, Petitioner filed an appeal with the Bureau of Prisons' Central Office challenging the Regional Office's denial of his appeal. (Id.). Petitioner's appeal to the Central Office was procedurally rejected because Petitioner failed to include a copy of the Regional Administrative Remedy Appeal. (Id.; Boldt Decl. [Docket No. 7] ¶ 14). In the notice informing Petitioner of the rejection of his appeal, Petitioner was instructed to resubmit his appeal in the proper form within fifteen days of the rejection notice.  (Boldt Decl. [Docket No. 7] ¶ 14). Petitioner did not resubmit his appeal to the Central Office within fifteen days as instructed.

3

It was not until April 8, 2021, that Petitioner again submitted an appeal to the Regional Office seeking to challenge the Discipline Hearing Officer's November 22, 2010, conclusions and sanctions regarding Incident Report 2082406. (Boldt Decl. [Docket No. 7] ¶ 16; Exhibit A [Docket No. 7-1] at 4). The Regional Office rejected Petitioner's April 8, 2021, appeal as untimely. (Boldt Decl. [Docket No. 7] ¶ 16; Exhibit A [Docket No. 7-1] at 4).

Petitioner appealed the Regional Office's most recent denial to the Central Office. (Boldt Decl. [Docket No. 7] ¶ 17; Exhibit A [Docket No. 7-1] at 5). The Central Officer also rejected Petitioner's appeal as untimely. (Boldt Decl. [Docket No. 7] ¶ 17; Exhibit A [Docket No. 7-1] at 5). Petitioner was informed that if he provided a memorandum from prison staff that the late filing was not Petitioner's fault, then Petitioner could resubmit his appeal with the memorandum to the level of the original rejection. (Boldt Decl. [Docket No. 7] ¶ 17; Exhibit A [Docket No. 7-1] at 5). No such memorandum was submitted by Petitioner.

On June 20, 2021, Petitioner initiated the present action by filing his Petition for a Writ of Habeas Corpus. [Docket No. 1].

## II.    Discussion

Petitioner seeks an Order of this Court restoring the 539 days[1] of nonvested good time credit he forfeited as a sanction of Incident Report 2082406. (Pet. [Docket No. 1] at 8). Petitioner does not challenge the other sanctions which were imposed upon him. (Id.). In support of this request, Petitioner contends that sanctioning him with the forfeiture of 539 days of nonvested good time credit is a disparate sanction when compared to the amount of nonvested good time credit which would be forfeited by a hypothetical prisoner found to have violated the same Code but who is serving a sentence shorter than Petitioner's sentence. (Id.). Petitioner summarizes his

---

[1] Although Petitioner was sanctioned with the forfeiture of 540 days of nonvested good time credit, he specifically seeks the return of 539 days of nonvested good time credit.

argument as follows: "A person with a longer sentence is subject to a harsher sanction just because he has more nonvested good conduct time available and a person with a [shorter] sentence has very little nonvested good conduct time available to take." (Id. at 6). Although Petitioner challenges the sanction imposed, Petitioner does not challenge the disciplinary process employed nor does he argue that he was denied the appropriate due process. (See, Id.).

Respondent argues that the present Habeas Petition should be denied because Petitioner procedurally defaulted his opportunity to exhaust his administrative remedies. (Resp. [Docket No. 6] at 6–9). In the alternative, Respondent argues that even if this Court considers the merits of the Petitioner's claim, the present Petition should be denied because neither the disciplinary procedure employed nor the sanction resulting from Incident Report 2082406 violated Petitioner's rights. (Id. at 9–15).

It is well established that a federal prisoner seeking relief through a writ of habeas corpus pursuant to 28 U.S.C. § 2241, like Petitioner here, must first exhaust the administrative remedies available to him. See, Mathena v. United States, 577 F.3d 943, 946 (8th Cir. 2009) ("A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP."); Willis v. Ciccone, 506 F.2d 1011, 1015 (8th Cir. 1974) ("If grievance procedures provide an adequate means for impartial review, then a federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court.").

The exhaustion requirement is not jurisdictional. See, Lueth v. Beach, 498 F.3d 795, 797 n.3 (8th Cir. 2007). It is, however, generally enforced absent circumstances which justify an exception. See,e.g., Masri v. Watson, No. 16-cv-4132 (MJD/FLN), 2017 WL 1131891 (D. Minn. Feb. 17, 2017) (denying habeas petition for failure to exhaust all available administrative

remedies); <u>Knox v. United States</u>, No. 16-cv-879 (WMW/KMM), 2016 WL 6022940 (D. Minn. Oct. 13, 2016) (same); <u>Aguilar v. United States</u>, No. 15-cv-487 (SRN/JSM), 2015 WL 5719166, at *2 (D. Minn. Sept. 29, 2015). The Eighth Circuit has held that a Federal District Court may err by considering the merits of a petition for a writ of habeas corpus when the petitioner "failed to demonstrate he had" properly exhausted his administrative remedies prior to seeking habeas corpus relief. <u>See</u>, <u>United States v. Thompson</u>, 297 F. App'x 561, 562 (8th Cir. 2008). There are exceptions, however, to the exhaustion requirement for habeas petitioners, including when requiring a habeas petitioner to exhaust all available administrative remedies would be futile and serve no useful purpose. <u>See</u>, <u>Aguilar</u>, 2015 WL 5719166, at *2.

A prisoner's exhaustion of administrative remedies regarding the appeal of a discipline hearing officer decision is a multi-tier process. If a prisoner is dissatisfied with the decision of a discipline hearing officer, the prisoner initially submits his appeal to the Regional Office. <u>See</u>, 28 C.F.R. § 542.14(d)(2). The prisoner must submit this initial appeal to the Regional Office within twenty days of the discipline hearing officer's decision. 28 C.F.R. § 542.14(a). If a prisoner is dissatisfied with the decision of the Regional Office, the prisoner "may submit an Appeal on the appropriate form (BP-11) to the General Counsel" at the Central Office "within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). An appeal to the General Counsel is required to be "submitted on the form designed for Central Office Appeals (BP-11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses." 28 C.F.R. § 542.14(b)(a). To fully exhaust his administrative remedies, a federal prisoner must complete each of these steps. <u>See, e.g.</u>, <u>Masri v. Watson</u>, No. 16-cv-4132 (MJD/FLN), 2017 WL 1131891, at *1 (D. Minn. Feb. 17, 2017), <u>report and recommendation adopted</u>, 2017 WL 1131884 (D. Minn. Mar. 24, 2017).

"If a prisoner deprives prison officials and the courts of the benefits of the administrative remedies process, by failing to pursue his administrative remedies in a proper and timely manner, his claims are procedurally defaulted." Donnelly v. Fed. Bureau of Prisons, No. 10-cv-3105 (DWF/JSM), 2012 WL 2357511, at *3 (D. Minn. May 30, 2012) (collecting cases), report and recommendation adopted, 2012 WL 2357490 (D. Minn. June 20, 2012). As the Eighth Circuit Court of Appeals has explained, "[t]he benefits from prior administrative review are substantial. The procedure must be given an opportunity to succeed." Mason v. Ciccone, 531 F.2d 867, 870 (8th Cir. 1976).

"Procedurally defaulted claims will not be entertained in federal court, unless the prisoner is able to show 'cause' for his default, and that actual prejudice will result if his claims are procedurally barred." Hach v. Anderson, No. 3-cv-6111 (RHK/SRN), Report and Recommendation [Docket No. 15] at 16 (D. Minn. Oct. 12, 2004), report and recommendation adopted, Order [Docket No. 19] (D. Minn. Dec. 28, 2004), aff'd 191 F. App'x 511 (8th Cir. 2006). To overcome a procedural default a prisoner must satisfy the "cause" requirement by demonstrating that "some 'external impediment' prevented him from exhausting his administrative remedies in a proper and timely manner." Hach v. Anderson, No. 3-cv-6111 (RHK/SRN), Report and Recommendation [Docket No. 15] at 16 (D. Minn. Oct. 12, 2004). The United States Supreme Court has explained, "'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him . . . ." Coleman v. Thompson, 501 U.S. 722, 753 (1991) (emphasis in original), holding modified by Martinez v. Ryan, 566 U.S. 1 (2012).

In the present case, Petitioner timely submitted his initial appeal to the Regional Office challenging the Disciplinary Hearing Officer's conclusions and sanctions regarding Incident

Report 2082406. Petitioner's initial appeal to the Regional Office was denied. Next, Petitioner appealed to the General Counsel at the Bureau of Prisons' Central Office. This appeal was rejected by the Central Office because Petitioner failed to include a copy of the Regional Administrative Remedy Appeal as required by statute. Petitioner was permitted fifteen days to properly resubmit his appeal to the Central Office. However, Petitioner did not resubmit his appeal to the Central Office in the time permitted.

As another Court in this District has explained, "[w]hen the Central Office rejected Petitioner's appeal and gave him time to correct and resubmit his appeal, the Central Office did not render a decision on the appeal. The Central Office was unable to review the merits because Petitioner did not include the Regional Office appeal and response." Crawford v. Fisher, No. 11-cv-641 (MJD/JJG), 2012 WL 465767, at *3 (D. Minn. Jan. 5, 2012), report and recommendation adopted, 2012 WL 446247 (D. Minn. Feb. 13, 2012). Although the Central Office permitted Petitioner additional time to resubmit his appeal, Petitioner here failed to do so. His time to submit the appeal to the Central Office has now long expired.

Therefore, Petitioner failed to exhaust his administrative remedies, and his claim is now procedurally defaulted. See, Id. Consequently, this Court will only entertain Petitioner's claim if he is able to demonstrate "cause" for his default and that actual prejudice will result if his claims are procedurally barred.

In the present action, Petitioner fails to even argue that "cause" exists or offer any explanation whatsoever for his failure to resubmit his appeal to the Central Office back in 2011, as he was instructed to do. Instead, Petitioner argues that his failure to exhaust his administrative remedies should be excused because he recently resubmitted his appeal to the Regional Office on

April 8, 2021, nearly a decade after his claims had become procedurally defaulted. Petitioner fails to offer any explanation for this ten-year delay.

On the record now before the Court, Petitioner has failed to demonstrate the "cause" necessary to overcome the 2011 procedural default of his claim because he has wholly failed to highlight an "external" impediment which prevented him from properly and timely exhausting his administrative remedies. Moreover, the Court's independent review of the record finds no valid reason to excuse Petitioner's procedural default.[2] This represents a sufficient independent basis to deny the present Petition. See, e.g., Crawford v. Fisher, No. 11-cv-641 (MJD/JJG), 2012 WL 465767, at *3 (D. Minn. Jan. 5, 2012), report and recommendation adopted, 2012 WL 446247 (D. Minn. Feb. 13, 2012); Masri v. Watson, No. 16-cv-4132 (MJD/FLN), 2017 WL 1131891, at *1 (D. Minn. Feb. 17, 2017), report and recommendation adopted, 2017 WL 1131884 (D. Minn. Mar. 24, 2017); Hach v. Anderson, No. 3-cv-6111 (RHK/SRN), Report and Recommendation [Docket No. 15] at 16 (D. Minn. Oct. 12, 2004), report and recommendation adopted, Order [Docket No. 19] (D. Minn. Dec. 28, 2004), aff'd 191 F. App'x 511 (8th Cir. 2006).

Although the 2011 procedural default of Petitioner's claim represents a sufficient, independent basis upon which to deny Petitioner's claim, the Court, in an abundance of caution will briefly comment on the merits of Petitioner's claim. The undersigned notes that even if the Court were to consider the merits of Petitioner's claim, the undersigned would still recommend the denial of Petitioner's claim.

As observed above, Petitioner contends that his loss of 539 days of nonvested good time credit is a disparate sanction when compared to the amount of nonvested good time credit which

---

[2] Because Petitioner has failed to establish the requisite "cause," the Court need not reach the issue of whether actual prejudice exists. See, Crawford v. Fisher, No. 11-cv-641 (MJD/JJG), 2012 WL 465767, at *3 (D. Minn. Jan. 5, 2012), report and recommendation adopted, 2012 WL 446247 (D. Minn. Feb. 13, 2012).

would be forfeited by a hypothetical prisoner found to have violated the same Code but who is serving a shorter sentence than Petitioner's sentence. Although Petitioner challenges the sanction imposed, Petitioner does not challenge the disciplinary process employed by the Bureau of Prisons or argue that he was denied the appropriate due process. Liberally construing his Petition in his favor, Petitioner is raising an Equal Protection claim arguing that the imposed sanction violated his right to equal protection under the law.

The Equal Protection Clause of the United States Constitution generally requires the government to treat similarly situated people alike. United States v. Whiton, 48 F.3d 356, 358 (8th Cir. 1995). Because Petitioner argues he is being treated differently based on the length of his imposed term of imprisonment, as opposed to his membership in a protected class, "the first step in" considering his "equal protection [claim] is determining whether the [petitioner] has demonstrated that [he] was treated differently than others who were similarly situated to" him. Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994). If a petitioner demonstrates that he is similarly situated to other prisoners who have been treated differently under similar circumstances, the second step requires the petitioner to show that the reason for the disparate treatment is "intentional or purposeful discrimination." Id. at 733.

In the present action, Petitioner has failed to sufficient allege a violation of his equal protection rights. Specifically, Petitioner has failed to demonstrate either prong of the applicable test.

First, Petitioner has failed to identify any prisoner who is similarly situated to him for purposed of the disciplinary sanctions imposed and who received more favorable treatment than Petitioner. In fact, Petitioner fails even to identify any prisoner who he believes is similarly situated. Instead, Petitioner compares his circumstances to a hypothetical prisoner who was

found to have violated the same Bureau of Prisons rule but who was serving a shorter sentence and thus had less nonvested good time credit available to forfeit. (See, Pet. [Docket No. 1]). This is patently insufficient primarily because a hypothetical prisoner cannot have had any action taken against him by the Bureau of Prisons.

Second, the record now before the Court is devoid of any indication that Petitioner received a more severe sanction for discriminatory purposes. See, Patel v. U.S. Bureau of Prisons, 515 F.3d 8007, 815 (8th Cir. 2008). The record presented to this Court does not support a finding that the Bureau of Prisons engaged in any intentional or purposeful discrimination. In fact, Petitioner fails to even argue that the sanction imposed upon him by the Bureau of Prisons was the result of intentional or purposeful discrimination.

In summary, Petitioner's claim should be denied because he procedurally defaulted his claim back in 2011, by failing to exhaust his administrative remedies, and even if the Court were to consider the merits of his claim, the Court would still recommend his claim be denied because he has failed to adequately plead a violation of his equal protection rights.[3]

---

[3] The Court finds that no hearing is necessary in the present action. See, Wallace v. Lockhart, 701 F.2d 719, 730 (8th Cir. 1983) (observing that dismissal of a "habeas petition without a hearing is proper . . . where the allegations, even if true, fail to state a cognizable constitutional claim, where the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record"). A hearing on the present Petition would not aid the Court in its consideration of Petitioner's claims.

**III.    Conclusion**

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT**

**IS HEREBY RECOMMENDED THAT**:

1. The Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED;** and

2. This action be **DISMISSED without prejudice.**

Dated: January 31, 2022                    _s/ Leo I. Brisbois_____
                                            Hon. Leo I. Brisbois
                                            United States Magistrate Judge

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).